# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Aimee Johnson and Brandon Jorgenson, <br><br> Plaintiffs, <br><br> v. <br><br> St. Louis County Public Health & Human Services et al., <br><br> Defendants. | Case No. 19-cv-111 (SRN/LIB) <br><br> **ORDER ON OBJECTIONS TO REPORT AND RECOMMENDATION** |

Aimee Johnson and Brandon Jorgenson, *Pro Se* Plaintiffs.

Nora C. Sandstad, St. Louis County Attorney's Office, 100 North 5th Avenue West, #501, Duluth, MN 55802, for Defendants St. Louis County Public Health & Human Services, Sarah Anderson, Hannah Jo Checketts, and Kelly Jane Thompson.

Kathryn Iverson Landrum, Minnesota Attorney General's Office, 445 Minnesota Street Suite 1100, Saint Paul, MN 55101, for Defendant Joan Mahle.

Mark A. Solheim and Pat O'Neill, III, Larson King, LLP 30 East 7th Street Suite 2800, Saint Paul, MN 55101, for Defendants Laura Yoki, Lon Yoki, and Gayle Koop.

SUSAN RICHARD NELSON, United States District Judge

Before the Court are Plaintiffs' Objections ("Objections") [Doc. No. 124] to the August 28, 2019 Report and Recommendation ("R&R") [Doc. No. 123] filed by Magistrate Judge Leo I. Brisbois. For the reasons set forth below, Plaintiffs' Objections are overruled, the magistrate judge's R&R is affirmed and adopted in full, and Plaintiff's Amended Complaint [Doc. No. 10] is **DISMISSED in its entirety without prejudice**.

I.       BACKGROUND

Plaintiffs Aimee Johnson and Brandon Jorgenson seek reinstatement of their parental rights over their two minor children, as well as punitive damages for purported fraud, misrepresentations, and violations of their constitutional rights that allegedly occurred during or in relation to a Minnesota state court proceeding in which Plaintiffs' parental rights were terminated. (*Id.* at 4.) As the magistrate judge noted, the details of Plaintiffs' complaint are less than clear. However, the exhibits attached to or necessarily embraced by the pleadings, as well as public records,[1] demonstrate that the underlying proceeding at issue was entitled *In the Matter of the Welfare of the Children of Aimee Renee Johnson & Brandon John Jorgenson* ("*In re the Welfare of Children of Johnson & Jorgenson*"), Case Nos. 69DU-JV-16-519 & 69DU-JV-17-357 (Cty. of St. Louis Dist. Ct.); (*See* Solheim Decl. Ex. 1 [Doc. No. 24-1].)

The magistrate judge's R&R accurately summarizes the procedural and factual history of the underlying state case. (*See* R&R [Doc. No. 123] at 3–4.) Accordingly, the Court only briefly discusses that background here. In late 2013, St. Louis County Public

---

[1] The Court looks to the material embraced by the complaint, including matters of public record, and the exhibits attached to the pleadings and motions to dismiss, in order to understand the factual underpinnings of the case. *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003) ("[I]n considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." (citation omitted)); *see also Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) ("When deciding a motion to dismiss, a court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." (citation omitted) (internal quotation marks omitted)).

Health and Human Services began investigating Plaintiff Jorgenson after Plaintiff Johnson reported that she had concerns that he was abusing their two children. *See* Petition for Termination of Parental Rights, *In re the Welfare of Children of Johnson & Jorgenson*, Case No. 69DU-JV-17-357 (Cty. Of St. Louis Dist. Ct. May 4, 2017). Eventually, after additional investigation, the children were placed in foster care. *Id.*

On May 4, 2017, the St. Louis County Department of Public Health and Human Services filed a Petition for the Termination of Parental Rights as to Plaintiffs and their two children. *See id.*; (*see also* Landrum Decl. Ex. B [Doc. No. 31-1] at 12 (full copy of the petition for termination of parental rights).) On January 16, 2018, the case went to trial; both Plaintiffs were present and represented. *See* Findings of Fact, Conclusions of Law, and Order for Termination of Parental Rights at 1, *In re the Welfare of Children of Johnson & Jorgenson*, Case Nos. 69DU-JV-16-519 & 69DU-JV-17-357 (Cty. Of St. Louis Dist. Ct. Feb. 16, 2018). After morning testimony, Plaintiffs met with their attorneys and subsequently informed the district court that they wished to voluntarily terminate their parental rights. (*Id.* at 1–2.) The district court accepted Plaintiffs' voluntary consents to termination, awarded guardianship of the two children to the Minnesota Commissioner of Human Services, and closed the state court case. (*Id.* at 1–2.) Shortly thereafter, Plaintiffs moved to withdraw their respective consents to termination; the district court denied those motions on February 7, 2018. (*Id.*)

On March 30, 2018, Plaintiffs filed a Motion to Reconsider and Reopen their parental rights termination case. *See* Order at 1, *In re the Welfare of Children of Johnson & Jorgenson*, Case Nos. 69DU-JV-16-519 & 69DU-JV-17-357 (Cty. Of St. Louis Dist. Ct.

Apr. 9. 2018). The district court denied that motion, noting that Plaintiffs had failed to appeal the termination of their parental rights in a timely manner and that they had provided no new information that would otherwise permit the district court to relieve them from the prior order. (*Id.* at 1–2.)

Plaintiffs commenced this suit on January 15, 2019 (*see* Compl. [Doc. No. 1],) seeking vacation of the state court's order terminating their parental rights, as well as punitive damages stemming from purportedly false statements and violations of their constitutional rights made during the underlying proceeding, (*see* Am. Compl. [Doc. No. 10] at 6.) Plaintiffs also filed a lengthy catalogue of exhibits in support of their claims. Defendants—St. Louis County's Public Health and Human Services Department, several social workers, the children's guardian ad litem, and the Plaintiffs' children's foster parents—filed motions to dismiss Plaintiffs' amended complaint on various grounds. (*See, e.g.*, Doc. Nos. 21, 27, and 59.) In response, Plaintiffs filed numerous motions generally aimed at either opposing the Defendants' motions to dismiss or at vacating the state court's termination of their parental rights. (*See, e.g.*, Doc. Nos. 82, 98, 101, and 110.)

The magistrate judge took the various motions (Doc. Nos. 21, 27, 59, 82, 98, 101, and 110) under advisement without a hearing. (*See* Min. Entry [Doc. No. 81] (noting that Doc. Nos. 21, 27, and 59 would be taken under advisement); Order re: Motions [Doc. No. 112] at 2–3 (noting that Doc. Nos. 82, 98, 101, and 110 would be considered at the same time as the other motions, and barring submission of any other motions until the pending motions were decided).)

On August 28, 2019, the magistrate judge filed his R&R. (*See* R&R [Doc. No. 123].) He recommended that the Court find that it lacks subject matter jurisdiction over Plaintiffs' case under the *Rooker-Feldman* doctrine, or in the alternative, the domestic relations exception to federal subject matter jurisdiction. (*See* R&R [Doc. No. 123] at 12.) Accordingly, the magistrate judge recommended *granting in part* Defendant Joan Mahle's Motion to Dismiss [Doc. No. 27] and Defendants St. Louis County, Sarah Anderson, Hannah Jo Checketts, and Kelly Jane Thompson's Motion to Dismiss [Doc. No. 59] and dismissing Plaintiffs' claims without prejudice, but *denying in part* each motion to the extent they seek dismissal with prejudice because absent subject matter jurisdiction, dismissal cannot be given *res judicata* effect. (R&R [Doc. No. 123] at 13.) Judge Brisbois also recommended that Defendants Lon Yoki, Laura Yoki, and Gayle Koop's Motion to Dismiss [Doc. No. 21] be denied as moot. (R&R [Doc. No. 12] at 13.) Finally, with respect to Plaintiffs' motions [Doc. Nos. 82, 98, 101, and 110], the magistrate judge recommended that each be denied without prejudice as moot in light of his recommendation on Defendants' Motions to Dismiss [Doc. Nos. 27 and 59].

On September 11, 2019, Plaintiffs filed Objections to the magistrate judge's report and recommendation, claiming, among other things: (1) that they had been "tricked" in the underlying state proceeding; (2) that social workers made untrue statements to the district court in that proceeding; (3) that this Court possesses diversity jurisdiction; (4) their due process rights were violated during, and in relation to, the state court proceeding; and (5) the mootness doctrine is inapplicable. (*See generally* Objections [Doc. No. 124].) Plaintiffs ask the Court to "hear this case and to overturn the state [c]ourt's ruling [terminating their parental

5

rights] for not following the law." (*Id.* at 5.) Plaintiffs briefly reference the *Rooker-Feldman* doctrine, but do not appear to have advanced an argument regarding its applicability except to say that a "[f]ederal claim is inextricably intertwined with the state court judgment if the federal claim succeeds only to the extent [t]hat the state court wrongly decided the issue before it." (*Id.* at 3–4.) Defendants have filed responses to Plaintiffs' Objections that, in general, argue that this Court should adopt the magistrate judge's recommendations in full. (*See* Defendants Responses to Pl.'s Objections [Doc. Nos. 133, 135, and 136].)

The same day that Plaintiffs filed their Objections to the magistrate judge's R&R, Plaintiff Johnson also filed a one-page Motion to Reinstate Parental Rights. (*See* Mot. to Reinstate Parental Rights [Doc. No. 128].) The Motion—which asks the Court to "overturn state courts decision & Reinstate parental rights (sic) to both children" (*id.* at 1)—has not been addressed by the magistrate judge. However, because it is entirely duplicative of Plaintiffs' prior motions, the Court will address it in this order alongside Plaintiffs' Objections to the magistrate judge's R&R.

## II. DISCUSSION

The Court undertakes an independent, de novo review of an R&R to which a party objects and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2012); *see also* D. Minn. L.R. 72.2(b)(3). The magistrate judge recommended dismissal of Plaintiffs' complaint based on the *Rooker-Feldman* doctrine, and the domestic relations exception to federal subject matter jurisdiction. The Court addresses each basis in turn.

6

## A. The *Rooker-Feldman* Doctrine

The Court is obligated to question its subject matter jurisdiction before proceeding to the merits of the Plaintiffs' case. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1990). One limit on the Court's subject matter jurisdiction is a legal principle known as the *Rooker-Feldman* doctrine, based on *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The principle recognizes the contours of state and federal jurisdiction underlying our federalism system by prohibiting "lower federal courts from exercising jurisdiction over actions seeking review of, or relief from, state court judgments." *Webb as next friend of K. S. v. Smith*, 936 F.3d 808, 816 (8th Cir. 2019) (citing *Hageman v. Barton*, 817 F.3d 611, 614 (8th Cir. 2016) (internal quotation marks omitted).[2] Put another way, a party who loses in state court "is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–1006 (1994) (citing *Feldman*, 460 U.S. at 482; *Rooker*, 263 U.S. at 416).

The doctrine also deprives lower federal courts of jurisdiction "over claims that are 'inextricably intertwined' with claims adjudicated in state court." *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1034 (citing *Feldman*, 460 U.S. at 482 n.16). Claims

---

[2] The doctrine also reflects the fact that only the United States Supreme Court may review decisions of a state court on their merits, and even then only after the appropriate appellate process has been followed. *See* 28 U.S.C. § 1257 (2012) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had[] may be reviewed by the Supreme Court by writ of certiorari[.]")

7

are "inextricably intertwined" with state court judgments for *Rooker-Feldman* purposes if the claims succeed " 'only to the extent that the state court wrongly decided the issues before it [or] if the relief requested . . . would effectively reverse the state court decision or void its ruling.' " *Id.* at 1034–35 (quoting *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995)).

While an important limit on federal courts' subject matter jurisdiction, the *Rooker-Feldman* doctrine is not without its own boundaries. The Supreme Court has "cautioned lower courts not to take a broad view of *Rooker-Feldman*," and has expressly limited its application to " 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting district court review and rejection of those judgments.' " *Webb*, 936 F.3d at 816 (quoting *Exxon Mobil Corp.*, 544 U.S. at 284); *see also Skinner v. Switzer*, 562 U.S. 521, 531 (2011) (reiterating the same). Accordingly, the doctrine does not apply where a state court has not issued any final judgments on the merits. *See Webb*, 936 F.3d at 816–17. Similarly, the doctrine is inapplicable where the federal proceeding alleges a prior injury that a state court failed to remedy, rather than an injury stemming from the state court judgment itself. *Id.* at 817 (citing *Skit Int'l, Ltd. v. DAC Techs. of Ark., Inc.*, 487 F.3d 1154, 1157 (8th Cir. 2007)); *see also Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008) (noting the distinction between an injury stemming from a state-court judgment and an injury from some other illegal act or omission; the former is barred, while the latter is not). Along those lines, the doctrine permits claims that are " 'separate from and collateral to the

merits of the state-court judgment.' " *Fielder*, 188 F.3d at 1034 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 21 (1987) (Brennan, J., concurring)).

Here, Plaintiffs' case falls squarely within—and is therefore prohibited by—the *Rooker-Feldman* doctrine's jurisdictional bar. Plaintiffs' amended complaint asks this Court for only two things: (1) for the Court to "reopen & have parental rights (sic) reinstated to plaintiffs"; and (2) for "punitive damages to be paid to plaintiffs for many right[s] violated, fraud, misrepresentation which voids contract by law, and ask all additional relief to which plain[t]iffs are [e]ntitled too for unjustly severing a family (sic)." (Am. Comp. [Doc. No. 10] at 6.) Plaintiffs directly request that this Court undo a state court decision and affirmatively reinstate Plaintiffs' parental rights over their children. Such a request can only be construed as asking for relief *directly from* a state court judgment. To grant Plaintiffs' relief on their complaint would require the Court to review the factual and legal basis for the Minnesota district court's final order terminating Plaintiffs' parental rights, essentially cloaking the Court in the garb of an appellate tribunal. Yet this is precisely what the *Rooker-Feldman* doctrine prohibits. *See Johnson*, 512 U.S. at 1005–1006 (citations omitted).

Plaintiffs' request for punitive damages does not change this result. Plaintiffs' damages request stems from perceived dishonesty and fraud that occurred in the documents provided to the state court during the underlying proceeding, and from the perceived "unjust[] sever[ance of] a family." (Am. Compl. [Doc. No. 10] at 6.) Awarding damages for such claims would require the Court to determine that the state court " 'wrongly decided the issues before it [or] . . . effectively reverse the state court decision or void its ruling' ",

9

thereby rendering Plaintiffs' damages claims "inextricably intertwined" with the state court judgment for *Rooker-Feldman* purposes. *See Fielder*, 188 F.3d at 1034–35 (quoting *Charchenko*, 47 F.3d at 983). Accordingly, under either form of relief sought, Plaintiffs' claims are jurisdictionally barred.

B. **The Domestic Relations Exception**

Apart from and in addition to the *Rooker-Feldman* doctrine, a legal principle known as the domestic relations exception to federal jurisdiction also stands as an independent bar to federal subject matter jurisdiction over this case. First articulated in *Barber v. Barber*, 62 U.S. 582 (1859), the domestic relations exception divests federal courts of jurisdiction over any matter pertaining to divorce, alimony, and child custody. *Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994). Moreover, federal courts will also generally abstain from exercising jurisdiction over cases closely related to divorce, alimony, or child custody, even where the case does not fit squarely "into the contours of an action for divorce, alimony, or child custody." *Id.* To that end, federal courts are divested of jurisdiction when the federal proceeding is "inextricably intertwined" with state domestic proceedings such that the requested federal remedy overlaps with the remedy at issue in the state court proceedings, which occurs when, "in addressing the same conduct involved in a state domestic proceeding," the remedy offered by a federal court would effectively modify, nullify, or predetermine the ruling in the state proceeding. *Wallace v. Wallace*, 736 F.36 764, 767 (8th Cir. 2013).

The Supreme Court has explicitly held that the domestic relations exception "divests the federal courts of power to issue divorce, alimony, *and child custody decrees*" even

10

where the claimed subject matter jurisdiction stems from the diversity of the parties. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (emphasis added). In discussing that holding, the Court noted that "sound policy considerations" counsel leaving such matters to state courts that are "eminently more suited to work of this type than are federal courts." *Id.* at 703–704. Indeed, state courts' "close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees" and "as a matter of judicial expertise . . . [their] special proficiency developed . . . over the past century and a half in handling issues that arise in the granting of such decrees" render them the ideal jurisdictional venue for such cases. *Id.* at 704 (citing *Lloyd v. Loeffler*, 694 F.2d 489, 492 (7th Cir. 1982)).

Here, Plaintiffs ask this Court to do what the domestic relations exception expressly precludes: vacate a state court judgment relating to child custody and reinstate their own parental rights. (Am. Compl. [Doc. No. 10] at 6.) Granting Plaintiffs' request would run directly afoul of the Supreme Court's holding in *Ankenbrandt*. *See* 504 U.S. at 703. Accordingly, Plaintiffs' claims are also barred by the domestic relations exception.

### C. Disposition of the Case

The Court lacks subject matter jurisdiction over Plaintiffs' case under both the *Rooker-Feldman* doctrine and domestic relations exception. While the Court understands that Plaintiffs are frustrated by the underlying state court decision, the lower federal courts—like this one—are simply not the appropriate forum in which to challenge that decision. Accordingly, the Court dismisses Plaintiffs' claims without prejudice. *See Romero v. Pinnacle Equities, LLC*, 283 F.3d Fed. App'x 429, 431 (8th Cir. 2008)

(modifying dismissal to be *without* prejudice where basis for dismissal was lack of subject matter jurisdiction).

## III. CONCLUSION

Based on the submission and the entire file and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' Objections [Doc. No. 124] to Magistrate Judge Brisbois's Report and Recommendation [Doc. No. 123] are **OVERRULED**;

2. The Report and Recommendation [Doc. No. 123] is **AFFIRMED and ADOPTED**;

3. Defendant Mahle's Motion to Dismiss [Doc. No. 27], and Defendants St. Louis County, Anderson, Checketts, and Thompson's Motion to Dismiss [Doc. NO. 59], are **GRANTED in part and DENIED in part**;

4. Defendants Lon Yoki, Laura Yoki, and Koop's Motion to Dismiss [Doc. No. 21] is **DENIED as moot**;

5. Plaintiffs various motions [Doc. Nos. 82, 98, 101, 110, and 128] are **DENIED without prejudice as moot**;

6. Plaintiffs Amended Complaint [Doc. No. 10] is **DISMISSED in its entirety without prejudice** for lack of subject matter jurisdiction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 1, 2019                 s/Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge